**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); APTALIS PHARMA US, INC. (a Delaware corporation); PHARMACYCLICS LLC (a Delaware limited liability company); ALLERGAN SALES, LLC (a Delaware limited liability company), | No. 6:23-CV-01307 |
| | Judge Robert R. Summerhays |
| *Plaintiffs*, v. | Magistrate Judge Carol B. Whitehurst |
| LIZ MURRILL, in her official capacity as the Attorney General of the State of Louisiana, | |
| *Defendant*. | |

**PLAINTIFFS' OPPOSITION TO LOUISIANA PRIMARY CARE ASSOCIATION'S
MOTION TO INTERVENE ON BEHALF OF DEFENDANT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

ARGUMENT .............................................................................................................. 5

I.     LPCA IS NOT ENTITLED TO INTERVENTION AS OF RIGHT. ......................... 5

       A.     LPCA's Interests Are Adequately Represented By The Attorney General. ........... 6

              1.     Fifth Circuit Law Imposes A Heavy Presumption That The
                     Attorney General Can Adequately Defend This Action. .......................... 6

              2.     LPCA Cannot Overcome The Presumption Of Adequate
                     Representation. .............................................................................. 8

       B.     LPCA's Motion To Intervene Is Untimely. ....................................................... 11

       C.     Denial Of Intervention Would Not Impede LPCA's Rights Because It Has
              No Private Right To Enforce Either Section 340B Or Act 358. ........................... 13

II.    LPCA IS NOT ENTITLED TO PERMISSIVE INTERVENTION. ........................ 15

III.   LPCA IS MORE APPROPRIATELY SITUATED AS AMICUS CURIAE. ........... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acra Turf Club v. Zanzuccki*,
   561 F. App'x 219 (3d Cir. 2014) ..............................................................................7

*Astra USA, Inc. v. Santa Clara Cnty.*,
   563 U.S. 110 (2011).................................................................................1, 2, 14

*AstraZeneca Pharms. LP v. Becerra*,
   2022 WL 484587 (D. Del. Feb. 16, 2022) ...................................................3, 12, 17

*Baker v. Wade*,
   743 F.2d 236 (5th Cir. 1984) ...............................................................................5, 7

*Bush v. Viterna*,
   740 F.2d 350 (5th Cir. 1984) ...........................................................................7, 8, 13

*Chevron Environ. Mgmt. Co. v. EPA*,
   335 F.R.D. 316 (E.D. Cal. 2020) ..........................................................................12

*Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*,
   2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) .........................................................3

*Freedom of Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ................................................................................7

*Guenther v. BP Ret. Accumulation Plan*,
   50 F.4th 536 (5th Cir. 2022) ................................................................................7

*Harrisburg Hosp. v. Thornburgh*,
   611 F. Supp. 900 (M.D. Penn. 1985) ....................................................................16

*Hopwood v. State of Tex.*,
   21 F.3d 603 (5th Cir. 1994) ......................................................................6, 7, 9, 18

*Ingebretsen on Behaf of Ingebretsen v. Jackson Pub. Sch. Dist.*,
   88 F.3d 274 (5th Cir. 1996) ...............................................................................6

*Jones v. Caddo Parish Sch. Bd.*,
   204 F.R.D. 97 (W.D. La. 2001) ..........................................................................16

*Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*,
   2010 WL 2008845 (M.D. La. May 19, 2010)..........................................................12

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
884 F.2d 185 (5th Cir. 1989) ................................................................6

*Mastercard Int'l Inc., v. Visa Int'l Servs. Ass'n., Inc.*,
471 F.3d 377 (2d Cir. 2006) .............................................................12

*Maxum Indem. v. Thermax, Inc.*,
2020 WL 9743896 (D. Mass. Jan. 7, 2020) .......................................12

*NAACP v. New York*,
413 U.S. 345 (1973) .....................................................................12, 17

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) .................................................15, 16, 17

*Novartis Pharms. Corp. v. Espinosa*,
2021 WL 5161783 (D.D.C. Nov. 5, 2021) ..........................................3

*PhRMA v. McClain*,
4:21-cv-00864, 2 (E.D. Ark. May 3, 2022) ...............................9, 12, 17

*Planned Parenthood of Wisc., v. Kaul*,
942 F.3d 793 (7th Cir. 2019) ..............................................................7

*R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir. 2009) ..................................................................17

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) .......................................................13, 16

*Sanofi-Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*,
58 F.4th 696 (3d Cir. 2023) ............................................................3, 4

*State of Louisiana v. Biden*,
338 F.R.D. 219 (W.D. La. 2021) ....................................................1, 6, 8

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) ..............................................................7

*Terrebonne Par. Branch NAACP v. Jindal*,
2016 WL 2743525 (M.D. La. May 11, 2016) ......................11, 13, 16, 17

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ..........................................10, 11, 14

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) ..........................................................................14

4

*United States v. U.S. Steel Corp.*,
   548 F.2d 1232 (5th Cir. 1977) ................................................................13

*Veasey v. Perry*,
   577 F. App'x 261 (5th Cir. 2014) .......................................................7, 18

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage*,
   834 F.3d 562 (5th Cir. 2016) ...................................................................6

**Statutes**

42 U.S.C. § 256b ......................................................................................4

42 U.S.C. § 256b(a)(4) ..............................................................................2

42 U.S.C. § 256b(a)(5)(C)-(D) ..................................................................2

42 U.S.C. § 256b(d)(1)(B)(v) ....................................................................2

42 U.S.C. § 256b(d)(2)(A) .........................................................................9

42 U.S.C. § 256b(d)(3) ..............................................................................2

42 U.S.C. § 256b, *et seq.* ...........................................................................2

42 U.S.C. § (d)(1)(B)(v) ............................................................................2

42 U.S.C. § (d)(3) ......................................................................................2

La. Stat. Ann. § 40:2881, *et seq.* ..............................................................4

La. Stat. Ann. § 40:2882(1) .......................................................................4

La. Stat. Ann. § 40:2882(2) .......................................................................4

La. Stat. Ann. § 40:2884(A) ......................................................................4

La. Stat. Ann. § 40:2884(B) ......................................................................4

La. Stat. Ann. § 51:1401, *et seq.* ..............................................................4

La. Stat. Ann. § 51:1407 .......................................................................1, 4

La. Stat. Ann. § 51:1408 .......................................................................1, 4

La. Stat. Ann. § 51:1417 .......................................................................1, 4

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................12

Fed. R. Civ. P. 24(a) ............................................................................................................15

Fed. R. Civ. P. 24(a)(2) ..........................................................................................................5

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................................16

**Other Authorities**

75 Fed. Reg. 10,272 (March 5, 2010) ...............................................................................2, 10

HHS, Advisory Opinion No. 20-06 (Dec. 30, 2020) ..............................................................3

## INTRODUCTION

LPCA has not satisfied the standards for intervention because the Louisiana Attorney General adequately represents its interests.  First, the Attorney General is presumed to represent the interests of would-be intervenors, especially when the only issue at bar is the constitutionality of a state law.  *State of Louisiana v. Biden*, 338 F.R.D. 219, 222 (W.D. La. 2021).  Second, the Attorney General is presumed to adequately represent the intervenors' interests where, as here, they both have the same ultimate objective.  The only issue in this case is whether Act 358 is unconstitutional, and both the Attorney General and LPCA seek to uphold the statute.

LPCA offers no evidence of adversity with, or collusion or nonfeasance by, the Attorney General.  Nor does LPCA have any concrete interest that would be frustrated absent intervention.  LPCA concedes that its members are not subject to AbbVie's contract pharmacy policy.  Moreover, neither the federal 340B program nor Act 358 authorizes a private right of action by covered entities against manufacturers.  *See Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011); La. Stat. Ann. §§ 51:1407, 51:1417, 51:1408.  To the contrary, the Supreme Court's *Astra* decision makes clear that a covered entity's only avenue for challenging manufacturers' conduct in relation to the 340B statute is through HRSA's mandatory administrative dispute resolution process.  LPCA seeks to intervene to assert precisely the type of claim its members are not permitted to litigate under *Astra*.

LPCA's motion is also untimely.  LPCA provides no explanation for its nearly five-month delay in moving to intervene.  This delay is particularly troublesome because LPCA previously intervened in the two related cases *while* AbbVie's complaint was pending but took no action to intervene in this case.

The Court should deny LPCA's motion to intervene.  Plaintiffs would not oppose LPCA filing an *amicus curiae* brief in support of the Attorney General.

## BACKGROUND

1.    This lawsuit concerns Louisiana's attempt to alter the conditions of Medicare and Medicaid participation and require drug manufacturers to transfer their property to politically favored parties, such as for-profit pharmacies and clinics.  In Section 340B of the federal Public Health Service Act, 42 U.S.C. § 256b, *et seq.*, Congress conditioned drug manufacturers' participation in Medicaid and Medicare Part B on their agreement to also participate in the federal "340B program."  That program requires manufacturers to offer certain outpatient drugs to an enumerated list of "covered entities" at deeply discounted prices.  42 U.S.C. § 256b(a)(4). Congress granted the federal Department of Health and Human Services (HHS), through its component agency the Health Resources and Services Administration (HRSA), exclusive authority to enforce the statutory requirements.  HRSA's Administrative Dispute Resolution ("ADR") panel is tasked with adjudicating disputes between manufacturers and covered entities like those represented by LPCA, 42 U.S.C. § 256b(d)(1)(B)(v), (d)(3), and covered entities have no private right to sue to enforce the statutory requirements.  *Astra*, 563 U.S.at 120 ; 42 U.S.C. § 256b(a)(5)(C)–(D), (d)(1)(B)(v), (d)(3).

Recently, litigation arose between manufacturers and HHS about the federal statute's substantive requirements. In 2010, HHS announced that it would allow covered entities to enter into contractual relationships with an unlimited number of "contract pharmacies."  75 Fed. Reg. 10,272, 10273 (March 5, 2010).  Under these contractual arrangements, for-profit commercial pharmacies like CVS and Walgreens are able to obtain manufacturers' drugs at well-below market prices (often for pennies), sell them to patients at full price, and then split the profits with the covered entity.  Am. Compl. ¶¶ 35, 38–39, 53, 61.  In 2020, HHS announced that it considered manufacturers to be under an affirmative statutory duty to cooperate with these unlimited "contract pharmacy" arrangements—even though the 340B statute had never been amended to impose that

obligation and even though the statute gives commercial pharmacies no right to participate in or profit from the federal 340B program.  HHS, Advisory Opinion No. 20-06, Contract Pharmacies Under the 340B Program (Dec. 30, 2020); Am. Compl. ¶ 70.

Drug manufacturers across the country, including AbbVie, challenged the agency's newly announced position.  AbbVie's policies reject hospital covered entity requests that AbbVie transfer its drugs at 340B prices to contract pharmacies, unless that hospital does not have an in-house pharmacy, selects a contract pharmacy within 40 miles of its location, and provides appropriate information to help protect against improper duplicate discounting.  As LPCA concedes, federal grantees (including LPCA's members) are excepted from this policy.  Mot. at 13 ("AbbVie's current policy … does not currently apply to LPCA's members.").  AbbVie thus continues to offer unlimited drugs at 340B prices to any *covered entity* that wants to buy them, as the 340B statute requires, but it limits when it will accept requests by hospital covered entities to transfer its drugs at federally discounted prices to for-profit contract pharmacies, which have no right to participate in the 340B program.

Last year, the Third Circuit—over Louisiana's objection as *amicus curiae*—sided with manufacturers.  The court of appeals unanimously rejected HHS's novel interpretation of the 340B statute.  *Sanofi-Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703 (3d Cir. 2023); *see also AstraZeneca Pharms. LP v. Becerra*, 2022 WL 484587, at *6 (D. Del. Feb. 16, 2022) (Stark, J.); *accord Novartis Pharms. Corp. v. Espinosa*, 2021 WL 5161783, at *7 (D. D.C. Nov. 5, 2021) (Friedrich, J.), *appeal pending*, No. 21-5299, *but see Eli Lilly & Co. v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 5039566, at *25 (S.D. Ind. Oct. 29, 2021) (Barker, J.), *appeal pending* No. 21-3405.  The Third Circuit held the federal statute did not require manufacturers to deliver 340B-discounted drugs at 340B discounted prices to an unlimited number

of contract pharmacies. *Sanofi-Aventis*, 58 F.4th at 703. The 340B statute requires only that manufacturers "offer" their drugs to covered entities at the 340B price, and "[e]ven if drug makers limit where they will deliver drugs, they still present the drugs for covered entities' acceptance" in compliance with the 340B program. *Id.*

2.    On March 31, 2023, two months after the Third Circuit's decision, Act 358 was introduced in the Louisiana House of Representatives. On June 12, 2023, the Louisiana Legislature enacted Act 358 into law. La. Stat. Ann. § 40:2881, *et seq.*

Act 358 purports to regulate manufacturers' compliance with the federal 340B program. Section 2882 defines the terms "340B drug" and "340B entity" by referencing 42 U.S.C. § 256b, the 340B statute. *See* La. Stat. Ann. § 40:2882(1), (2) ("Definitions."). Act 358 contains two provisions imposing obligations on manufacturers. Under the first, "[a] manufacturer or distributor shall not deny, restrict, prohibit, or otherwise interfere with, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with a 340B entity and is authorized under such contract to receive and dispense 340B drugs on behalf of the covered entity unless such receipt is prohibited by the United States Department of Health and Human Services." La. Stat. Ann. § 40:2884(A). Under the second, "[a] manufacturer or distributor shall not interfere with a pharmacy contracted with a 340B entity." La. Stat. Ann. § 40:2884(B). And because Act 358's definitions of "340B drug" and "340B entity" explicitly refer to the federal 340B statute, the *only* individual drug units subject to regulation under these provisions are those purchased at the federal discounted price.

A violation of Act 358 is an automatic violation of the Louisiana consumer-protection statute. La. Stat. Ann. § 51:1401, *et seq.* Under that law, only the Attorney General and district attorneys under her supervision may seek civil penalties or injunctive relief for a violation. La.

Stat. Ann. §§ 51:1407, 51:1417, 51:1408.  Act 358 does not contain a private right of action for citizen enforcement.

3.    On September 21, 2023, AbbVie filed this lawsuit against then-Attorney General Jeffrey Landry to enjoin enforcement of Act 358.  ECF No. 1.  AbbVie amended its complaint on September 27, 2023.  ECF No 5.  The Attorney General answered AbbVie's complaint on November 22, 2023.  ECF No. 20.  AbbVie filed its motion for summary judgment on January 12, 2024.  ECF No. 28.  One day beforehand, on January 11, counsel for movant LPCA, contacted AbbVie to seek its position on a motion to intervene as a party.  LPCA moved to intervene a week later on January 19, 2024.  ECF No. 30.  Plaintiffs oppose LPCA's intervention.

## ARGUMENT

LPCA's motion to intervene should be denied because it is both inappropriate and untimely.  This lawsuit challenges the constitutionality of a Louisiana statute that only the state Attorney General is permitted to enforce.  The Attorney General has appeared and is defending the law.  And there is no colorable suggestion that the Attorney General cannot adequately represent the interests of those, like LPCA, who wish to see the law upheld.

## I.    LPCA IS NOT ENTITLED TO INTERVENTION AS OF RIGHT.

To intervene as of right, a party must satisfy four conditions: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action must threaten to impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties.  *Baker v. Wade*, 743 F.2d 236, 240 (5th Cir. 1984) (citing Fed. R. Civ. P. 24(a)(2)).  If the movant "fails to establish any one of these requirements, then [it] may not intervene as of right." *Id.*  The movant bears the burden of establishing its right to intervene.

*Biden*, 338 F.R.D.at 222  (citing *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage*, 834 F.3d 562, 565 (5th Cir. 2016)).  LPCA cannot satisfy any of the necessary requirements.

### A.    LPCA's Interests Are Adequately Represented By The Attorney General.

LPCA cannot overcome the legal presumption that the Attorney General will adequately represent its interests.

### 1.    Fifth Circuit Law Imposes A Heavy Presumption That The Attorney General Can Adequately Defend This Action.

Fifth Circuit law erects a strong presumption that the state Attorney General will adequately defend LPCA's interests.  *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994). "[W]here the party whose representation is said to be inadequate is a governmental agency," the government is presumed to adequately represent the intervening party's interests, unless the applicant can prove that "its interest is in fact different from that of the state and that the interest will not be represented by the state." *Id.* 21 F.3d at 605.  Although any party seeking intervention must show that the existing parties will not adequately represent its interests, a "much stronger showing of inadequacy [is] required" when the Attorney General is the party whose representation is claimed to be insufficient.  *Id.*  Indeed, the Attorney General is "presumed to represent the interests of all of its citizens," and to overcome this presumption, LPCA must prove that it has "a separate interest that the State will not adequately represent." *Id.* at 606.

Federal courts routinely deny intervention on the basis of this presumption. *See Ingebretsen on Behaf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (denying intervention of private group because "[t]he Attorney General undoubtedly affords the Proposed Intervenors' interests adequate representation."); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (denying intervention where would-be intervenors failed to rebut "Texas Attorney General's presumed representation of

common interests"); *see also Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) (Wilkinson, J.) (affirming denial of intervention because it is "difficult to conceive of an entity better situated to defend [a state statute] than the government"); *Freedom of Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (O'Scannlain, J.) (denying intervention of a private citizen where federal government adequately defended constitutionality of tax exemption).

In this case, the Fifth Circuit's presumption of adequate representation applies for a second, independent reason:  When "the party seeking intervention has the same ultimate objective as a party to the suit," unless the intervening party demonstrates "adversity of interest, collusion, or nonfeasance" with or by that party, it is presumed that its interests are adequately represented. *Baker*, 743 F.2d at 240–41.  Because the Attorney General and LPCA have the same objective— upholding Act 358 against constitutional challenge—the Attorney General is presumed to adequately represent that interest.  *Hopwood*, 21 F.3d at 605; *see Baker*, 743 F.2d at 242 (denying intervention where case "present[ed] only the question of the constitutional validity or invalidity of a state law, determined solely on the face of that law and not as applied to any specific situation.").  Numerous cases support this second presumption, too.  *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014) (denying intervention where ultimate objective was the same); *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) ("an intervenor must demonstrate that its interests diverse from the putative representative's interests in a manner germane to the case."); *Bush v. Viterna*, 740 F.2d 350, 356 (5th Cir. 1984) (denying intervention where Texas Commission adequately represented would-be intervenors interests); *see also Planned Parenthood of Wisc., v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019) (denying intervention where Attorney General had same objective of upholding constitutionality of state law); *Acra Turf Club v. Zanzuccki*, 561 F. App'x 219, 222 (3d Cir. 2014) (same).

This Court's decision in *Biden* illustrates the rule.  In that case, the State of Louisiana and others sued President Biden challenging his constitutional and statutory authority to impose a moratorium on oil and gas leases offshore and on public lands.  338 F.R.D. at 219.  Several conservation groups sought to intervene, alleging an interest in "protecting the environment in reference to oil and gas leasing practices." *Id.* at 223.  This Court denied invention because both the President and conservation groups had the "same ultimate objective;" namely, whether "Defendants had the constitutional and/or statutory authority to pause new oil and gas leases." *Id.* at 224.  Because there can "only be one 'same ultimate objective'" and the objective in that "specific lawsuit" was the government's "constitutional and statutory authority, not [] climate policy" the conservation groups were not entitled to intervene. *Id.*

LPCA's motion to intervene suffers from the same defect.  The only issue in this case is the constitutionality of Act 358, not the supposed demerits of Plaintiffs' contract pharmacy policy. LPCA and the Attorney General have the same ultimate objective in upholding Act 358's constitutionality.  LPCA is therefore not entitled to intervene.

### 2.    LPCA Cannot Overcome The Presumption Of Adequate Representation.

LPCA alleges the Attorney General does not adequately represent its interests because (1) the Attorney General has not "taken any enforcement actions against drug companies"; and (2) the Attorney General "has a policy that actually *limits* 340B discounts for drugs dispensed by contract pharmacies." Mot. at 15.  Neither argument remotely suggests the Attorney General will not vigorously defend the state law in "*this* proceeding." *Bush*, 740 F.3d at 356.

*First*, the mere fact that the Attorney General has not yet brought an enforcement action within the first six months of Act 358's enactment—particularly while the constitutionality of that Act is being actively litigated—is not evidence that the Attorney General will not vigorously

defend the state law.  Nor does it suggest that if the law is upheld, the Attorney General will fail to enforce it; indeed, the very threat of future enforcement, and the resulting threat to constitutional rights, forms the basis of AbbVie's complaint and alleged future harm.  State governments must balance objectives and resource constraints in making enforcement decisions.  In *Hopwood*, the Fifth Circuit acknowledged that although the State had to "balance competing goals" while the intervening party had "sharply focused" goals of preserving the policy, that was insufficient to demonstrate "that the State [would] not strongly defend" the contested program, and therefore did not overcome the presumption of adequate representation.  21 F. 3d at 605–06.  So too here.[1]

*Second*, LPCA points to a different state regulation, which it contends "actually *limits* 340B discounts for drugs dispensed by contract pharmacies," as purported evidence that the Attorney General cannot adequately represent its interests.  Mot. at 15 (citing La. Dep't Health, Bull. No. 16-9, 340B Policy Clarification (Jan. 6, 2023)).  That argument reflects a serious misunderstanding of applicable federal law.  The federal 340B statute makes it *illegal* to use 340B drugs in a claim covered by Medicare or Medicaid—*i.e.*, to take a "duplicate discount." *See* 42 U.S.C. § 256b(d)(2)(A).  The Louisiana policy to which LPCA points attempts to *prevent* such "duplicate discounting" because it is "prohibited under federal law."[2]  The policy explains that the 2010 HRSA guidance permitting covered entities' unlimited contract pharmacy usage "expressly prohibits contract pharmacies from dispensing drugs purchased under the 340B Drug Pricing Program to Medicaid recipients unless the covered entity, the contract pharmacy, and the state

---

[1] Nor is the LPCA's comparison to Arkansas's Act 1103 persuasive. *See* Mot. at 8-9 (citing *PhRMA v. McClain*, 4:21-cv-00864, 2 (E.D. Ark. May 3, 2022), ECF No. 22).  The Arkansas Insurance Commissioner stayed enforcement of the law during the litigation over the objection of the would-be intervenors.  The Louisiana Attorney General has taken no such position.  Moreover, the fact that no parties opposed intervention in that case—leading the court to presume those parties did not see any prejudice from intervention—has nothing to do with AbbVie's rights in this case.

[2] Ex. 1, La. Dep't of Health, Bull. No. 16-9, 340B Policy Clarification (Jan. 6, 2023), at 1, https://ldh.la.gov/assets/HealthyLa/Pharmacy/Council/InformationalBulletin16-9.pdf.

Medicaid agency have established an arrangement to prevent duplicate discounts." *See* Ex. 1 at 3 (citing 75 Fed. Reg. 10,272 (Mar. 5, 2010)). Because Louisiana "has no such agreements," covered entities comply with the federal prohibition on duplicate discounting by "carv[ing] in" or "carv[ing] out" Medicaid recipients for fee-for-service (FFS) and managed-care organization (MCO) costs. *See id.* at 3-5. That the state Medicaid agency has a policy aimed at preventing violations of the 340B statute does not mean the state's Attorney General will not adequately defend Act 358.[3]

Nor is LPCA's claim to intervention akin to that in *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015). There, several Jane Does sought to intervene in a challenge by twenty-six states to the implementation of a federal program called "Deferred Action for Parents of Americans and Lawful Permanent Residents" ("DAPA"), which would have permitted certain aliens to remain in the United States for an additional period of time. *Id.* at 656. The Fifth Circuit granted intervention because an "interest in avoiding deportation" is the kind of "concrete, personalized interest" protected by the Due Process Clause of the Fifth Amendment, and they were the kind of individuals Congress designed the DAPA program to benefit. *Id.* at 660. Had the Does been denied the right to intervene, they would have had no other opportunity to contest deportation or obtain employment authorization. *Id.* at 661. Neither circumstance is present here. LPCA does not claim a "concrete" or "personalized" interest in the outcome of the litigation, much less one protected as

---

[3] In practice, because covered entities are statutorily prohibited from receiving both the 340B price and receiving Medicaid reimbursement for the same dispensation of a drug, covered entities must elect whether to receive 340B discounts or Medicaid reimbursement for drugs and, under the state's policy, covered entities will receive 340B discounts on contract pharmacy dispenses rather than Medicaid reimbursement. *Id.* at 3 ("Louisiana . . . requires that all contract pharmacies to **carve out** Medicaid recipients for both FFS and MCO 340B drug claims." (emphasis altered)); *id.* at 2 ("Carve-outs means that **no** drugs purchased under the 340B Drug Pricing Program will be billed to Medicaid."). In this way, the state's policy actually *favors* LPCA's members, by providing that claims should be purchased under 340B—from which LPCA generates "revenue"—as opposed to being reimbursed by Medicaid. . Mot. at 16.

a matter of due process, because LPCA has no right to enforce either the federal 340B statute or Act 358. And, the agency ADR procedures provide a separate avenue through which LPCA could seek to redress its supposed decreased revenue.

*Texas* is also distinguishable for another reason. The Fifth Circuit concluded the Does had pointed to a specific and particularized area of disagreement with the government. The Does sought to protect their employment opportunities, including seeking driver's licenses and other state documentation to substantiate their ability to work in the United States, while the government had taken the position that states could "refuse to issue driver's licenses to [DAPA] recipients," a position "directly adverse" to the Jane Does' stated interests. *Id.* at 663. Here, LPCA points to no such "directly adverse" interest between it and the Attorney General.

LPCA also argues that it would provide the "unique perspective," including how contract pharmacy arrangements "benefit" covered entities and their patients. Mot. at 16. That argument misses the mark for three reasons. First, courts have denied intervention where parties sought to intervene on a similar basis. *See Terrebonne Par. Branch NAACP v. Jindal*, 2016 WL 2743525, at *2 (M.D. La. May 11, 2016) (denying intervention where would-be intervenors claimed to bring a "local perspective on the current historical, political, and demographic factors at issue . . . that could benefit the court's understanding of the factual and legal merits of Defendants' position." (internal quotations omitted)). Second, the "perspective" LPCA purports to provide is not relevant to the only live issue in this case: whether Act 358 is unconstitutional. Third, to the extent LPCA's perspective is relevant, it is appropriately provided in the form of an *amicus curiae* brief.

### B.    LPCA's Motion To Intervene Is Untimely.

LPCA's motion should also be denied because it is untimely. LPCA moved to intervene months after the initial complaint and Defendant's answer, and only after AbbVie filed its dispositive motion. *See NAACP v. New York*, 413 U.S. 345, 363–67 (1973) (motion to intervene

untimely when filed four months after action commenced and three months after applicants had notice of the action); *see also Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, 2010 WL 2008845, at *3 (M.D. La. May 19, 2010) (motion to intervene where dispositive motions had been filed was untimely); *Mastercard Int'l Inc., v. Visa Int'l Servs. Ass'n., Inc*., 471 F.3d 377, 390 (2d Cir. 2006) (denying intervention and holding delay of 3-5 months unreasonable); *Chevron Environ. Mgmt. Co. v. EPA*, 335 F.R.D. 316, 327–29 (E.D. Cal. 2020) (denying intervention and holding delay of five months unreasonable). When courts permit intervention several months after an initial filing, they typically do so only where, unlike here, the defendant has not yet answered the complaint or filed a Rule 12 motion. *See, e.g.*, *Maxum Indem. v. Thermax, Inc.*, 2020 WL 9743896, at *14 (D. Mass. Jan. 7, 2020) ("defendant has not [yet] filed an answer to the complaint").

LPCA's delay is particularly problematic given its ongoing involvement in two related cases: *AstraZeneca Pharmaceuticals LP v. Landry*, 6:23-cv-01042-RRS-CBW, and *Pharmaceutical Research & Manufacturers of America v. Landry*, 6:23-cv-000997-RRS-CBW. LPCA moved to intervene in both of those cases on November 7, 2023. LPCA provides no explanation why it did not move to intervene here on the same day, even though AbbVie's complaint at that time had been pending for nearly two months. That lack of explanation is particularly troublesome because here, unlike in *PhRMA* and *AstraZeneca*, AbbVie does not consent to intervention. LPCA provides no explanation for why it did not move to intervene in this case on the same day it moved in *PhRMA* and *AstraZeneca* when it undoubtedly could have.

In any event, the "most important consideration" about timeliness is the "extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have

known of his interest in the case." *Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021); *see United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) ("timeliness is not limited to chronological considerations, it is to be determined from all the circumstances" (internal quotations omitted)). AbbVie will suffer prejudice should LPCA be permitted to intervene because the Attorney General has already answered, and AbbVie has already filed its dipositive motion. LPCA, by contrast, will suffer no prejudice should its motion be denied because its interests are adequately represented by the Attorney General, and no unusual or other circumstances require LPCA's intervention out of time.

Despite LPCA's insistence that it is ready to comply with the existing deadline for filing a cross motion for summary judgment, "[a]dditional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like." *Terrebonne Par. Branch NAACP*, 2016 WL 2743525, *3 (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)). There is no reason the Court should permit LPCA's untimely motion.

### C. Denial Of Intervention Would Not Impede LPCA's Rights Because It Has No Private Right To Enforce Either Section 340B Or Act 358.

The remaining two factors weigh against granting LPCA's motion. Because LPCA has no right to enforce either the federal 340B statute or Act 358, it has no right or interest in the subject matter of this litigation. Moreover, LPCA cannot have important interest here because it concedes that AbbVie's contract pharmacy policy does *not* apply to LPCA or its members. Mot. at 13 ("AbbVie's current policy … does not currently apply to LPCA's members.").[4]

---

[4] The Supreme Court's decision in *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) is distinguishable. There, the Court permitted intervention by union workers despite the fact that Congress had denied union workers a private right of action to challenge union elections, concluding that Congress channeled challenges to union elections to the Secretary so that the Secretary could "screen[] and centraliz[e]" enforcement and later bring suit in only the most meritorious cases. *Id.* at 532–33. The Court concluded the congressional mechanism was,

Pursuant to federal law, LPCA could not file suit to enforce its proffered interest in 340B "revenue" because only the federal ADR process is available to resolve charging and pricing disputes. LPCA's stated interest in Act 358 is exactly the kind of interest the Supreme Court has explained is not litigable. In *Astra*, a covered entity hospital system sued a manufacturer for charging drug prices above the 340B-discounted price and sought reimbursement, asserting that the monies were required to "satisfy the unmet need for critical healthcare services in [plaintiffs'] communities." *Astra USA, Inc. v. Santa Clara Cnty.*, No. 09-1273 (Joint Appendix at 31; Second Am. Compl. at ¶5), *reversed* 563 U.S. at 113. The Supreme Court clarified that the statute foreclosed any private challenge by covered entities, making clear that any such complaints must be brought through the mandatory HRSA ADR process because (much like Act 358) the 340B statute does not contain a private right of action. *Astra*, 563 U.S. at 119, 122. Here, LPCA espouses a nearly identical interest, asserting that covered entities "use 340B savings and revenue . . . to provide vital safety-net services to impoverished patients and communities." Mot. at 14. LPCA would not be allowed to file a private suit on its own for such a purpose, so denying intervention does not impede its rights.[5]

LPCA's expressed interest in addressing decreased revenue to covered entities is virtually identical to the interests expressed by the Attorney General in its answer. *See, e.g.*, ECF No. 20 ¶100 (expressing disagreement with manufacturers' contract pharmacy policies because they raise

---

essentially, an *exhaustion* requirement. *Id.* at 531. Under *Astra*, there is no private right to sue *at all*. 563 U.S. at 119–20.

[5] Plaintiffs are not suggesting that LPCA is required to satisfy an independent standing analysis in order to intervene. *See Texas* 805 F.3d at 659 ("[A]lthough an asserted interest must be 'legally protectable,' it need not be legally *enforceable*."). Plaintiffs disagree that LPCA has a "legally *protectable*" interest sufficient to confer standing to intervene in *litigation*. Covered entities seeking to challenge manufacturer's policies *do* have "enforceable" legal interests, that interest just must be enforced through HRSA's ADR mechanism. Where a Congressional statute confines, and Supreme Court precedent confirms, LPCA's interest is protectable or enforceable only through a regulatory ADR process, that interest does not meet the dictates of Rule 24(a).

costs for "safety-net institutions").  Either way, that interest mischaracterizes the intent of the federal 340B policy—which is designed to protect patients, not the financial interests of covered entities.  And, in any event, the Fifth Circuit has held that making less money as a result of a blanket policy is the kind of generalized economic harm that is insufficient to satisfy Rule 24(a). *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470 (5th Cir. 1984).

LPCA speculates that AbbVie could one day change its policy such that it limits the ability of LPCA's members to transfer 340B priced drugs to contract pharmacies.  Even if that should come to pass, the agency's ADR procedures are the only mechanism statutorily available to resolve overcharging disputes between manufacturers and covered entities.  It is not as if LPCA would forever lose its ability to seek redress if denied intervention in this litigation, even if Act 358 were ultimately struck down, and AbbVie later changed its policy to apply to LPCA.  *See, e.g., id.* at 463 (explaining Rule 24(a) requires a showing that "disposition of the action may, as a practical matter, impair or impede [a would-be intervenor's] ability to protect that interest."). Congress expressly provided for an exclusive, comprehensive enforcement scheme to govern 340B, meaning that LPCA's ability to protect or otherwise assert its interest will not be impeded by the outcome of this litigation.

## II.    LPCA IS NOT ENTITLED TO PERMISSIVE INTERVENTION.

Permissive intervention is within a court's discretion where the would-be intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *New Orleans Pub. Serv., Inc.*, 732 F.2d at 470–71.  In exercising that discretion, a court considers several factors, including "whether the intervenors' interests are adequately represented," "whether they will significantly contribute to full development of the underlying factual issues in the suit," and whether the proposed intervention will unduly delay or

prejudice the adjudication of the original parties' rights.  *Id.* at 472 (internal quotations omitted); *Rotstain*, 986 F.3dat 942.

Here, for many of the reasons outlined above, the discretionary factors—timeliness, prejudice, adequate representation of interests, and inability to contribute to the development of the factual issues at hand—counsel against permitting LPCA to intervene.  *See New Orleans Pub. Serv.*, 732 F.2d at 470–72 (considering adequate representation of proposed intervenor's interests by other parties, and whether the intervenor "will significantly contribute to full development of underlying fact issues," and ultimately denying permissive intervention); *Jones v. Caddo Parish Sch. Bd.*, 204 F.R.D. 97, 102 (W.D. La. 2001) (denying permissive intervention, in part because "Proposed Intervenors had not overcome the presumption of adequate representation on the part of the Government"); *Rotstain*, 986 F.3d at 942 (denying the motion for permissive intervention due to untimeliness).

Timeliness is evaluated more stringently when seeking permissive intervention.  *See Jones*, 204 F.R.D. at 101-02.  And courts routinely deny permissive intervention due to untimely filing.  *See NAACP*, 413 U.S. at363–67  (motion to intervene untimely when filed four months after action commenced and three months after applicants had notice); *Harrisburg Hosp. v. Thornburgh*, 611 F. Supp. 900, 903 (M.D. Penn. 1985) (denying intervention because "proposed intervenor has not set forth an adequate reason for waiting almost four months to attempt to enter the case"); *see also R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 12 (1st Cir. 2009) (affirming denial of intervention where party "delayed any challenge for some two and one-half months").

Here, LPCA provides no explanation for its nearly five-month delay, nor why it could not have moved to intervene on November 7, 2023, the same day it moved to intervene in the other two related cases (and nearly two months after AbbVie filed its complaint).  Nor is the fact that

LPCA intervened in those cases persuasive with respect to this litigation—neither PhRMA nor AstraZeneca opposed intervention. AbbVie does. LPCA bided its time until it could read the summary judgment briefs against the State and determine at *that* point whether it wanted to intervene—that is not good cause for delay.

Nor are there any "unusual circumstances" militating in favor of permissive intervention because, as LPCA admits, AbbVie's policy does not apply to LPCA's members (unlike the policies implicated in the *PhRMA* and *AstraZeneca* cases). The Supreme Court affirmed the denial of intervention in *NAACP* in part because none of the would-be intervenors "alleged an injury, personal to him, resulting from the discriminatory use of a literacy test." 413 U.S. at 368. For that reason, the Court concluded "there were no unusual circumstances warranting intervention." *Id.* So too here. Not only are LPCA's interests not impeded, LPCA has no interest because AbbVie's contract pharmacy policy does not apply to its members and even if it did, there is an exclusive federal ADR process through which it could seek appropriate relief.

## III. LPCA IS MORE APPROPRIATELY SITUATED AS AMICUS CURIAE.

Should LPCA wish to register its views on Act 358's constitutionality, it is better suited to do so as an *amicus curiae*. *New Orleans Pub. Serv.*, 732 F.2d 473 ("Where the intervenors do not have a legally protectable interest, are adequately represented by an existing party and will not add to the relevant factual development of the case, the position of amicus may be considered more appropriate . . . if, as here, such intervention may materially dimmish the original parties' rights."); *see also Veasey*, 577 F. App'x at 263 (denying intervention because Attorney General had same objective but permitting would-be intervenor to serve as *amici*); *Hopwood*, 21 F.3d at 605–06 (same). Although LPCA has not made the requisite showing to intervene, AbbVie would not oppose LPCA's participation as *amicus curiae*.

17

Dated: February 9, 2024

Ashley C. Parrish (admitted *pro hac vice*)
John D. Shakow (admitted *pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Suite 900
Washington, D.C. 20006
Telephone: (202) 626-2627
Email: aparrish@kslaw.com
        jshakow@kslaw.com

Nicole Bronnimann (admitted *pro hac vice*)
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone: (713) 276-7402
Email: nbronnimann@kslaw.com

Respectfully submitted,

*/s/ Charles M. Jarrell*
Matthew S. Owen, P.C. (admitted *pro hac vice*)
Meredith Pohl (admitted *pro hac vice*)
Kimberly Kelly (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Email: matt.owen@kirkland.com
        meredith.pohl@kirkland.com
        kim.kelly@kirkland.com

Charles M. Jarrell (No. 17638)
GUGLIELMO, LOPEZ, TUTTLE, HUNTER &
JARRELL, L.L.P
306 East North Street, P.O. Box 1329
Opelousas, LA 70571-1329
Telephone: (337) 948-8201
Email: cjarrell@glthj.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendants' Motion for Summary Judgment and Memorandum in Support thereof was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record by electronic means.

*/s/ Charles M. Jarrell*

Charles M. Jarrell
